## SMITH v. SHEHEE.

### No. 4278.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1932.

Rehearing Granted July 14, 1932.

Goff & Goff, of Arcadia, for appellant.

John T. Campbell, of Minden, for appellee.

PALMER, J.

This is a suit against the administrator of the succession of William Adams to enjoin him from selling the S. ½ of the N. E. ¼ of section 10, township 19 north, range 10 west, in Bienville parish, La., as the property of said succession.

### The Pleadings.

Plaintiff alleges that he is the owner and in the actual physical possession of an undivided two-thirds interest in said land, having acquired it from Annie Adams Campbell and James Adams, by deed duly recorded in the Conveyance Records of Bienville parish, La., and that his said title has been confirmed by final judgment in a previous suit between all parties in interest.

Plaintiff further alleged that the defendant, pretending to act as administrator of the estate of William Adams, has advertised the said property for sale on August 1, 1931, under a pretended order from the district court authorizing the sale, to pay certain debts, shown on schedule to amount to $1,085.63, and that all of said alleged debts, except one for $68.48, claimed to be due defendant and Mrs. Eva L. Shehee, are claimed to be owing to one Daisy Adams Rambo, an illegitimate daughter of the said William Adams and one of the defendants in said suit, in which plaintiff's title to an undivided two-thirds interest in said land was confirmed; that on June 29, 1927, the said Daisy Adams Rambo filed a petition in the district court, alleging that she and certain other parties named, who were her codefendants in the said previous suit, are the sole and only legitimate heirs of the said William Adams, deceased, and that on said petition they secured an ex parte judgment recognizing them as said heirs and sending them into

possession of the said property; that in their said petition no mention of any debts or claims of any kind, due by said succession, was made; and that the said Daisy Adams Rambo, who is now asserting a general claim against said succession, is estopped to claim any sum due her from the said estate.

Plaintiff further alleged that in the said previous suit involving the said title it was held that the said judgment recognizing the said Daisy Adams Rambo and the other parties appearing with her as the sole heirs of William Adams is a nullity; that all the debts set forth in the petition of defendant, as administrator, asking for an order to sell said property, have prescribed, and that they have not been acknowledged by the legal heirs of William Adams; that, if acknowledged by William Adams before his death, such debts are long since barred by prescription of three years; and that no oral testimony to the effect that the debts were acknowledged can be received.

Petitioner further alleged that, in purchasing the said two-thirds interest from two of the legitimate heirs of the said William Adams, he did so without notice of any outstanding claims of any kind against the said estate, and hence was in good faith, acting on the face of the public records some two years after the death of the said William Adams; and that any sale that would be made by the said administrator under said order would work an irreparable injury to him; and that an injunction is necessary to protect his rights in the premises. He prayed for a temporary restraining order against the administrator proceeding further with his efforts to sell said property and for a rule on him to show cause, at a time to be fixed by the court, why a preliminary writ of injunction should not issue, enjoining him from proceeding further with his efforts to sell said property, and finally for a perpetuation of the injunction.

On this petition, the court directed that a temporary restraining order be issued, upon plaintiff giving bond in the sum of $200, temporarily enjoining and restraining the defendant from proceeding further with his efforts to sell said property, pending a hearing in the case; and further ordering that a rule issue directed to the defendant, which was made returnable five days later, ordering him to show cause, if any he had, why a preliminary injunction should not issue, as prayed for.

Defendant answered, pleading a general denial, and further pleading that the judgment in the said previous suit recognizing plaintiff as the owner of an undivided two-thirds interest in the said land, was null and void, for the reason that the Court of Appeal, which rendered the final judgment, was without jurisdiction ratione materiæ to try the issue involved in that case, basing that claim upon the allegations that the said suit involved the legitimacy of children, in which instance only the Supreme Court has appellate jurisdiction.

In the alternative, defendant pleaded that, if the said previous judgment of this court is not a nullity, then and in that event Daisy Adams Rambo, Sallie Adams Ashley, Murphy Ashley, Leroy Ashley, Herman Ashley, Jessie Lee Ashley, and Charlie Ashley, Jr., were on June 29, 1927, recognized as the sole heirs of William Adams, deceased, by judgment of the district court, and were sent into possession of the property belonging to the said succession, which included the lands described in plaintiff's petition, which possession they still hold; that said parties have repeatedly acknowledged the indebtedness listed on the schedule of debts the defendant, as administrator, filed in said succession; that plaintiff obtained his pretended deed to the two thirds interest in said land from James Adams and Annie Adams Campbell, without opening the succession of the said William Adams and Winnie Adams, the father and mother of the said parties, and without having expressly or tacitly accepted said succession, and subject to the debts of said succession; that the judgment rendered in said previous suit did not become final until March 2, 1931, after the Supreme Court of the state of Louisiana had refused a writ of review, and that on the 17th of March 1931, less than three months after the said judgment became final, he (defendant) applied to be appointed administrator of the said succession; and that, after complying with the formalities of law, was duly appointed, and thereupon qualified; that the deed which plaintiff holds to said property has no legal effect as to him and the other creditors of William Adams, deceased; and that they have a right to a judicial administration of the said succession for the purpose of paying said debts and charges.

Defendant prayed that the judgment of this court in the said previous suit be decreed an absolute nullity for want of jurisdiction ratione materiæ.

In the alternative, defendant prayed that, if the judgment in the said previous suit is not decreed to be a nullity, he be adjudged entitled to administer the effects of the said succession for the benefit of its creditors, and, to that end, that he be permitted to sell the properties of said succession, including these lands, for the purpose of paying the debts and charges against the succession.

Defendant finally prayed that the rule issued in this case be recalled, that the temporary restraining order be dissolved, and that the demands of plaintiff be rejected at his cost.

On these issues the case went to trial, resulting in a judgment in favor of plaintiff, perpetuating the writ of injunction. From that judgment, defendant prosecutes this appeal.

## Statement of Facts.

William Adams and Winnie Adams became associated as man and wife during slavery, and have been recognized as such, under the custom then prevailing relative to slave marriages. There were three children born of that union; namely, Annie, James, and Dusta. Some years after the Civil War, William Adams established an illicit relationship with one Julia Carley, and there were several children born of that relationship, three of whom reached majority. The others died while children and before the death of their parents.

In the year 1913, his slave wife, Winnie Adams, having died in the year 1907, William Adams married his said concubine, and in the marriage they attempted by notarial act to legitimate their children, who were, namely, Sallie Adams Ashley, Daisy Adams Rambo, Rose Adams Ashley, Pink Adams, and Jay Adams. During the time that William Adams and his slave wife lived together as husband and wife, under their slave marriage, William Adams homesteaded the eighty acres of land involved in this suit, and in due course obtained a patent covering it.

Julia Carley, William Adams' said second wife, died in November, 1916, and in February of 1927 William Adams died. In June, 1927, Daisy Adams Rambo and Sallie Ashley presented a petition to the district court of the parish in which these lands are situated, alleging that they and certain named minor children of Rose Adams Ashley, deceased, are the sole heirs of William Adams and Julia Carley Adams, and, upon that petition, obtained an ex parte judgment recognizing them as such heirs and sending them into possession of the property alleged to belong to their father and mother, including the eighty acres of land in question.

On the 5th of November, 1928, plaintiff in this case secured from Annie Adams Campbell and James Adams, two of the children of the slave marriage between William Adams and Winnie Adams, a deed conveying all their rights, title, and interest in and to the lands involved in this controversy. On the 29th of the following December, plaintiff instituted a petitory action against the said Daisy Adams Rambo, the said Sallie Adams Ashley, and the said minor children of Rose Adams Ashley, deceased, asking that the said ex parte judgment recognizing them as the sole heirs of William Adams be decreed a nullity, and that he be decreed the owner of an undivided two-thirds interest in the said land.

The defendants in the said previous suit denied that plaintiff had any interest in the said land, specially averring that the mother of plaintiff's authors in title was never married to their father, William Adams; that plaintiff's said authors in title were never the owners of, or had any interest in, the said

lands; that their father and mother (William Adams and Julia Carley Adams) lived together as man and wife since about the year 1875, and later contracted a marriage and formally acknowledged their children, which gave them, the defendants in said suit, the standing of legal children and heirs of their said father and mother, and that, upon their death, the property involved in this suit passed, by inheritance, to them.

The district court rejected the demands of plaintiff in that suit. From that judgment, plaintiff appealed to this court, which reversed the judgment of the lower court and recognized the validity of the slave marriage between William Adams and Winnie Adams, and hence recognized their said three children, including plaintiff's authors in title, to be their legal heirs; and further decreeing the children born of William Adams and Julia Carley to be adulterous bastards, incapable of being acknowledged. See Smith v. Rambo et al., 15 La. App. 448, 131 So. 524. Also the court decreed that the ex parte order of the district court in the succession of William Adams and Julia Carley, in so far as it recognized Daisy Adams Rambo et al., as the sole heirs of William Adams, deceased, be set aside and annulled, and that Annie Adams Campbell, James Adams, and Dusta Adams, children of William Adams and his slave wife, Winnie Adams, the first two of whom are plaintiff's authors in title, be recognized the sole legal heirs of William and Winnie Adams, and that plaintiff in that suit, who is plaintiff in this suit, be recognized and decreed the owner of an undivided two-thirds interest in the land embraced in this suit.

Defendants in that suit sought to obtain a writ of review from the Supreme Court, which was refused on March 2, 1931. On March 17, 1931, Daniel L. Shehee, the defendant in this case, applied to the district court for appointment as administrator of the succession of William Adams, and, upon that application, an order was issued appointing him as administrator of said succession, after which letters of administration were issued to him. Thereupon he caused an inventory to be made of the property alleged to belong to the succession of William Adams, deceased. Upon filing the inventory, he secured an order to sell the property listed thereon for the purpose of paying certain debts shown on the schedule of debts filed with his pleadings. It was under this order that defendant advertised for sale the eighty acres of land involved in this suit. While the property was being thus advertised for sale, this suit was filed, resulting in an injunction against the defendant, restraining him from selling the said property.

## Opinion.

The questions presented in this case are:

(1) Is the judgment of this court rendered in the case entitled W. B. Smith v. Daisy Ad-

ams Rambo et al., 15 La. App. 448, 131 So. 524, a nullity for the reason that this court was without jurisdiction ratione materiæ to try and determine the issues involved?

(2) If said judgment is not a nullity, can the whole of said property be sold to pay the debts shown on the schedule filed by defendant, and, if so, have the said debts prescribed, and, if not, should the injunction be dissolved and defendant permitted to sell the property in order to pay said debts?

We shall consider these questions in the order in which they are stated.

Was the judgment of this court previously cited a nullity for the want of jurisdiction ratione materiæ?

It is the position of the defendant that in the said case in which the alleged null and void judgment was rendered the issue of the legitimacy of heirs was involved and was the principal question for decision, and that, under section 10, article 7, of the Constitution of 1921, the Supreme Court alone has appellate jurisdiction in suits involving such questions.

It will be borne in mind that the same attorneys in that suit are the attorneys in this suit, and yet such a question was not there raised. It is well settled, however, that, when jurisdiction is wanting, the court is bound ex officio to notice it because a judgment of a court wanting such jurisdiction is null. Code of Practice, art. 606 (Dart's Annotations and authorities there cited). We are of the opinion, therefore, that the court, in deciding that case, noticed all possible questions, only to determine that the action there was petitory, involving title to land valued at more than $100 and less than $2,000. The Supreme Court, by refusing a writ, approved the findings of the Court of Appeal.

The entire record in that suit has been filed in evidence in this case, and a review of it convinces us that the nature of that case was purely a petitory action involving title to lands of a lesser value than $2,000 and more than $100. In that suit, plaintiff prayed primarily that his authors in title be recognized as the heirs of William and Winnie Adams, deceased, and that he be decreed the owner of an undivided two-thirds interest in the land involved.

It is true, in that case the question of the validity of the slave marriage between the father and mother of plaintiff's authors in title was involved, and likewise it is true that the question as to what effect could be given the act of William Adams and Julia Carley, after their marriage, in attempting to legitimate their children, was involved; but, fundamentally, the question the court had to decide was the title to the eighty acres of land, and its value determined the question of appellate jurisdiction.

Notwithstanding these views, because of the importance of the question raised, we submitted it to the Supreme Court and asked for instructions, as follows:

"The undersigned judges of the Court of Appeal, Second Circuit of Louisiana, availing themselves of the right conferred by Section 25, Article VII of the Constitution of 1921, submit for instructions to the Supreme Court, the question of law hereinafter stated, which arises out of suit No. 4278, entitled W. B. Smith v. Daniel L. Shehee, and which said suit has been argued and submitted on appeal taken by the defendant.

"Facts of Case

"William Adams and Winnie Adams became associated as man and wife during slavery and were recognized as such under the custom prevailing relative to slave marriages. There were three children born of that association, namely; Annie, James and Dusta. Some years after the Civil War, William Adams established an illicit relationship with one Julia Carley, and there were several children born to them, three of whom reached majority. The others died while children, before the death of their parents.

"In the year 1913, William Adams,—his slave wife, Winnie Adams, having died in the year 1907,—married his said concubine, Julia Carley, and in the marriage they attempted by notarial act to legitimate their children who were, namely; Sallie Adams Ashley, Daisy Adams Rambo, Rose Adams Ashley, Pink Adams and Jay Adams. During the time that William Adams and his slave wife lived together, he homesteaded the S. ½ of N. E. ¼ of Section 10, Township 19 North, Range 10 West, in Bienville Parish, Louisiana, and in due course obtained a patent therefor.

"Julia Carley, the said second wife of William Adams, died in November 1916, and in February, 1927, William Adams died. In June, 1927, Daisy Adams Rambo and Sallie Adams Ashley presented a petition to the District Court of Bienville Parish, alleging that they and the minor heirs of Rose Adams Ashley, deceased, are the sole heirs of William Adams and Julia Carley, and, upon that petition, they obtained an ex parte judgment recognizing them as such heirs and sending them into possession of this property.

"On the 5th of November, 1928, W. B. Smith, plaintiff in the present suit, acquired from Annie Adams Campbell and James Adams, two of the children of William Adams and his slave wife, Winnie Adams, a deed covering all their rights, title and interest in and to this land. On the 29th of December, 1928, the said Smith instituted a suit against the said Daisy Adams Rambo, Sallie Adams Ashley, and the said minor children of Rose Adams Ashley, deceased, alleging his owner-

-ship of an undivided two-thirds interest in the said land; and that he acquired this interest from Annie Adams Campbell and James Adams by deed of conveyance. He further alleged that his said vendors inherit-ed the said interest from their said father and mother, who had acquired it under pat-ent from the United States Government. He further alleged that the said children of William Adams and Julia Carley claimed to own the said property, but that they have no interest therein; that the said William Adams and Winnie Adams, father and mother of his authors in title, were married during slavery under the customs of slave marriages, and continued to live together as man and wife until her death.

"Plaintiff in that suit further alleged that, while William and Winnie Adams lived together as husband and wife, William Adams kept the said Julia Carley as his concubine, and that after the mother of plaintiff's authors in title died, their father married his said concubine and made an attempt to legitimate their children, but that they were adulterous bastards and could not be legitimated.

"Plaintiff prayed for judgment annulling the ex parte judgment of the District Court, whereby the children of William Adams and Julia Carley were recognized as the sole surviving heirs of William Adams and sent into possession of the said land. He further prayed that his two authors in title be recognized as the legal heirs of William and Winnie Adams, deceased, and that he be decreed the owner of two-thirds interest in the said property and entitled to the possession thereof.

"The defendants answered that suit, admitting that William Adams acquired the said property by patent from the United States Government, but alleged that he was never married to Winnie Adams, the mother of plaintiff's vendors, and that she and her said children were never the owners of any interest in any of the said land. They further alleged that their said father, William Adams, and that said mother, Julia Carley, after having lived together as man and wife for many years, contracted a marriage and formally acknowledged their children, thereby legitimating them.

"The District Court rendered judgment in favor of the defendants, rejecting plaintiff's demands. From that judgment, plaintiff appealed to this court. After a hearing, this court, in effect, held that William and Winnie Adams became man and wife under a slave marriage, and that their said children inherited this land upon their death; and that the said children of William Adams and Julia Carley are adulterous bastards; and that the title of plaintiff, which he acquired from two of the children of William and Winnie Adams, is a valid title.

"In the case now before the court, the same plaintiff has brought the suit against Daniel L. Shehee, who has been appointed administrator of the succession of the said William Adams, to enjoin him from selling this same land as the property of the said succession, which the administrator is seeking to do, in order to pay alleged debts of the succession. In his petition, plaintiff has set up his title and stands upon the said judgment which he obtained in the said former suit. The defendants in the present suit, among other things, deny the validity of the judgment of this court in the said previous suit, on the grounds that this court was without jurisdiction ratione materiæ to try and determine the issues in that case, basing that claim on the fact that the issues in that case involved the legitimacy of James Adams and Annie Adams Campbell, the authors in title of plaintiff, and also involved the legitimacy of said children of William Adams and Julia Carley, who they claim were legitimated by notarial act. Section 10, article 7, Constitution of 1921.

"The judgment in the said previous suit was rendered by this Court on December 23, 1931. After a rehearing was refused, an application was made to the Supreme Court of Louisiana for a writ of review, and on March 2, 1931, that writ was refused. The question of jurisdiction was not raised in this court in the previous suit. Since the judgment of this court in that case was approved by the Supreme Court, and not knowing whether or not the Supreme Court considered the question of jurisdiction, we feel that a situation has arisen whereby we should submit to the Supreme Court the following question.

"Question.

"Although, in the said previous suit, plaintiff was seeking to recover a two-thirds interest in a tract of eighty acres of land, valued at more than $100.00 and less than $2000.00, yet, inasmuch as his right to recover depended upon establishing that his authors in title were legal heirs of William and Winnie Adams, and that the said children of William Adams and Julia Carley were adulterous bastards, did this court have jurisdiction to decide those questions?

"For the convenience and assistance of the Supreme Court, we are transmitting the entire record in this case, and which also contains the entire record of the said previous suit, together with briefs of both plaintiff and defendant."

Through his honor, the Chief Justice, the Supreme Court has answered our question as follows:

"The court of appeal has asked whether a judgment which that court rendered in a petitory action, for property having a value within the jurisdiction of the court, is null for want of jurisdiction because, in order to decide who owned the property, the court had to decide the question of legitimacy of cer-

tain heirs from whom the plaintiff claimed title, and had to decide also whether an act purporting to legitimate the defendants was valid. The judgment was rendered in the case of W. B. Smith v. Daisy Adams Rambo et al., 15 La. App. 448, 131 So. 524.

"Our answer is that the case was within the jurisdiction of the court of appeal and that the judgment which the court rendered is therefore a valid judgment. The jurisdiction of the court was determined properly by the value of the property in contest, and not by the fact that the title to the property depended upon the question of legitimacy of certain heirs. The provision in section 10 of article 7 of the Constitution giving the Supreme Court 'appellate jurisdiction of all suits involving * * * the legitimacy or custody of children, and matters of adoption and emancipation,' has reference to suits in which one of the matters mentioned is the matter in contest. That provision in the Constitution does not mean that the Supreme Court shall have appellate jurisdiction of every case in which the question of legitimacy of a person arises incidentally, or has to be decided in order to settle the matter in contest. For example, section 10 of article 7 of the Constitution, excludes from the appellate jurisdiction of this court suits for compensation under the employer's liability act, or workmen's compensation law; and it happens often that the legitimacy of a dependent claiming compensation for the death of an employee is questioned by the defendant in such a case.

"In Minor v. Young, 144 La. 635, 81 So. 208, it was held that the suit, being a petitory action for property worth less than $2000.00, was within the jurisdiction of the court of appeal, notwithstanding the decision depended upon the question whether the plaintiffs, who were illegitimate children, were duly acknowledged, or 'natural children.'

"In Heard v. Monroe Sand & Gravel Co., 165 La. 925, 116 So. 386, being a suit for $501.37, it was held that the case was within the jurisdiction of the court of appeal, notwithstanding the defendant had put at issue, —and the plaintiff's right to recover depended upon,—the validity of a contract of a value exceeding $2000.00.

"The ruling in Delpit v. Canal Bank & Trust Co. (Succession of Mingo) on rehearing, 143 La. 298, 78 So. 565, on the question of jurisdiction, is not in conflict with our opinion in this case. There, Ernest Delpit and his brothers and sisters, claiming to be the legitimate brothers and sisters of the deceased, Victoria White Mingo, opened her succession and obtained an ex parte order of court sending them into possession of the estate. They obtained a rule on a certain bank to show cause why a deposit of $736.50 should not be turned over to them. The bank refused to assume the responsibility for paying the amount to the Delpits, because Mrs. Mingo was survived by her husband, Smiley Mingo. The bank, therefore, deposited the amount into the registry of the court and asked that Smiley Mingo be cited to assert whatever claim he might have on the fund. He filed what he called a petition of intervention, in which he alleged that the Delpits were illegitimate children of the parents of the deceased, Victoria White Mingo, and in which petition Smiley Mingo prayed that the ex parte order recognizing the Delpits to be the heirs of the deceased should be annulled, and that he should be recognized as the only heir of his wife. This court exercised appellate jurisdiction over the suit between Smiley Mingo and the Delpits, because, as we explained on rehearing, there was no suit or contest between the Delpits and the bank, with regard to the deposit of $736.50, and because the so-called petition of intervention of Smiley Mingo was in fact an original petition, tendering for the first time the question of legitimacy of the Delpits, and claiming the whole estate.

"Our answer to the question propounded by the court of appeal is that the court did have jurisdiction to decide the case of W. B. Smith v. Daisy Adams Rambo et al., 15 La. App. 448, 131 So. 524."

In view of the foregoing answer of the Supreme Court, we hold that this court had jurisdiction in the said former suit, and that the judgment therein rendered by this court is valid in all particulars.

■ Inasmuch as the property involved in this suit, the whole of which is sought to be sold to pay alleged debts of William Adams, belonged to the community of acquêts and gains formerly existing between him and his slave wife, Winnie Adams, and since at least that portion thereof inherited by plaintiff's authors in title from their mother, Winnie Adams, cannot be sold to pay debts of the succession of William Adams, plaintiff is clearly entitled to the injunction granted in this case. When Winnie Adams died, her undivided one-half interest in this property immediately passed by inheritance to her three children, two of whom are plaintiff's authors in title, leaving only an undivided one-half interest in William Adams. When defendant seeks, as he is here doing, to sell the whole of said property to pay alleged debts of William Adams, Winnie Adams' heirs, or those holding title under them, have a perfect right to enjoin defendant from making such a sale. This principle of law is clearly enunciated in the case of Festivan et al. v. Clement et al., 135 La. 938, 66 So. 304.

In view of these conclusions, it is unnecessary to pass on the other questions raised in the case.

The judgment of the lower court is therefore affirmed, appellant to pay all costs of appeal.